IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| TUIJA A. VEPSALAINEN<br>and PEDRO AMARAL, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 190252N |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's Notice of Deficiency[1], dated April 12, 2019, for the 2015

tax year. A trial was held on September 23, 2019, in the courtroom of the Oregon Tax Court.

Plaintiff Pedro Amaral (Amaral) appeared and testified on behalf of Plaintiffs. Dana Miller

appeared on behalf of Defendant. Plaintiffs' Exhibits where mislabeled but were received

without objection. Defendant's Exhibits A through L were received without objection.

## I. STATEMENT OF FACTS

Plaintiffs claimed $52,497 in miscellaneous itemized deductions on their 2015 federal

return. (Def's Ex A-2.) That amount included Amaral's employee business expenses of

$2,289 in vehicle expenses; $760 in parking, fees, tolls and other transportation expenses;

$1,803 in overnight travel expenses; and $33,144 in other expenses. (*Id*. at 3.) It also included

Tuija Vepsalainen's (Vepsalainen) employee business expenses of $1,354 in vehicle expenses;

$87 in parking, fees, tolls and other transportation expenses; $1,305 in overnight travel

expenses; and $9,778 in other expenses. (*Id.* at 4.) Except $1,325 for union dues and tax

---

[1] Presumably the deficiency was assessed or otherwise finalized after the Notice of Deficiency was issued. *See* ORS 305.265(14) (providing that "[i]f the deficiency is paid in full before a notice of assessment is issued, the department is not required to send a notice of assessment, and the tax shall be considered as assessed as of the date which is 30 days from the date of the notice of deficiency or the date the deficiency is paid, whichever is later."); ORS 305.280(3) (appeal may be filed within two years after the date the amount of tax shown on the notice is paid).

preparation, Defendant disallowed all expenses at audit. (Compl at 3-8; Ans at 1.) The remaining amount was disallowed because it fell "below the two percent AGI threshold of $3,753 * * *." (Compl at 7.)

At trial, Plaintiffs' requested deductions included Amaral's internet expense in the amount of $1,805; cellphone expense in the amount of $2,379; various online purchases and subscriptions, and computer software and hardware in the amount of $8,529; and Vepsalainen's expenses for travel to Finland, in the amount of $1,540. Defendant does not dispute that the payments were made, but rather argues that the amounts represented personal expenses that are not deductible. Defendant also questioned whether Plaintiffs could have been reimbursed by their employers for their expenses.

Amaral[2] testified that during the 2015 tax year, both Plaintiffs resided in Ashland, Oregon, but worked remotely in Fresno, California. Amaral is a tenured professor at California State University, Fresno (CSU). Amaral's area of expertise is philosophy and his primary focus is on philosophy and humanities. (Ptfs' Ex 23.) Amaral has published numerous books and articles on a range of philosophical topics including ethics, logic, epistemology, metaphysics, and philosophy of mind. Amaral taught a philosophy class entitled "Cognitive Science, Mind" in 2015.[3] (*See* Ptfs' Exs 10-18.)

Vepsalainen was employed part time as an architect for an architecture firm in Fresno. She also worked freelance as an artist and illustrator. Amaral testified that Vepsalainen "is a true genius" who has a unique ability to draw building designs freehand rather than with a computer.

---

[2] Amaral was the only witness at trial. Unless otherwise noted, facts set forth in the Statement of Facts are based on Amaral's testimony.

[3] Amaral may have taught other courses in 2015 but did not provide any testimony or exhibits relating to any other courses.

A.   *Internet Expense*

Plaintiffs provided spreadsheets and bank statements substantiating $1,674[4] in internet expenses.  (Ptfs' Exs 43 at 7; 44 at 1-12.)  Amaral testified that it has become virtually impossible to conduct business in the world without access to the internet.  Amaral conducted 50 percent of his classes online and 50 percent in person, which was permitted by CSU policy.  (*See* Ptfs' Exs 12; 114 at 1.)  The online portion was conducted through a program called "Blackboard" provided by CSU.  Professors created all the content for the courses available on Blackboard.  Amaral's exams were conducted online through Blackboard for the students' convenience.  His classes featured an online discussion component.  Amaral testified that he was online on Blackboard at "all times" to moderate student discussions and answer student questions.  Amaral also used the internet to conduct research, access information, and upload content relevant to his publishing endeavors.  Amaral testified that Vepsalainen required access to the internet for her part-time remote work with the architecture firm.

Plaintiffs did not pay for separate internet access for an office or other workspace. Amaral was unwilling to allocate any percentage of internet use to personal use.  Amaral testified that the cost would have been the same regardless of how much of his use was personal and how much was business related.  Plaintiffs wrote that "[w]hile it is possible to waste time watching 'dog videos' or 'prank videos,'" [Plaintiffs], who don't own a television or a landline, use digital connectivity exclusively for professional purposes."  (Ptfs' Ex 29 at 1.)

/ / /

/ / /

---

[4] The spreadsheet total of $1,804.52 includes one payment from January 2016.  Plaintiffs' bank statements show total payments to Comcast in 2015 of $1,674.

B.      *Cell Phone Expense*

Plaintiffs deducted the cost of both their personal cell phones and a tablet in the amount of $2,379.  (Ptfs' Ex 43 at 8.)  Plaintiffs did not allocate between business and personal use of their cellphones and tablet.  Amaral testified that the primary use was for work.  Amaral used his cell phone to monitor the online student discussion groups on Blackboard and to make himself available to students.  Amaral testified he used the tablet in class.

C.      *Vepsalainen Travel Expense*

Plaintiffs request travel expenses in the amount of $1,540 for Vepsalainen's travel to Finland.  (Ptfs' Ex 82 at 3.)  Vepsalainen traveled to Finland to "advance herself intellectually" and "for creative architectural study/research and research/examination of art in preparation for future exhibits." (*Id.* at 1.)  Amaral testified that Vepsalainen went to Finland to participate in art shows with her sister, but she did not sell any of her art on that trip.  (*See id.*)

Plaintiffs provided a list of Vepsalainen's job sites and roundtrip mileage but did not provide a mileage log.  (Ptfs' Ex 21.)  Amaral testified that "that she did not go to visit project sites for clients, rather she traveled to refamiliarize herself with the locale."  Amaral conceded that there was no apparent connection between the mileage listed and visits to the job sites and, at the end of trial, conceded the mileage expense.

D.      *Other Expenses*

The remaining miscellaneous expenses claimed were for a variety of items related to Amaral's teaching and publishing work.  Amaral testified that CSU may not dictate what professors must do because it would violate the college's policy on academic freedom.  (*See also* Ptfs' Ex 111.)  Amaral understood his duties as a university professor to include purchasing books and resources to support both his teaching work and other academic activities required of

a professor. Amaral's courses changed in subject matter, sometimes dramatically, and he was required to purchase resources to "retool" his competency in a given area but did not give specifics. He testified that students' expectations and culture changed, requiring new resources to support student "lifelong learning." (*See also* Ptfs' Exs 10-14; 62.) Amaral used many of the materials he purchased in class or to create content for Blackboard but provided little testimony connecting the expenses with the classroom or publishing activities. He used other items to explore the culture generally in pursuit of inspiration and creative insight. (*See* Ptfs' Ex 62 at 3.)

1. *Newsreader access charges*

Plaintiffs incurred expenses in the amount of $405.82 for access to "newsreader" platforms online *i.e.* Altopia and Itunes. (Ptfs' Exs 45, 47.) Amaral testified that Altopia allows users to access the "dark net." He explained that the "dark net" was derived from earlier academic and government databases and information sharing networks. Amaral testified that Altopia connects academic and scientific professionals via the "dark net" and it is where he obtained up-to-date information for use in his lectures. Amaral testified that he used Itunes "for scientific, political, and educational podcasts."

2. *Digital Amazon purchases*

Plaintiffs made numerous purchases of digital media through Amazon—primarily books for Kindle, but also audiobooks and videos. (Ptfs' Ex 61 at 1-6.) Plaintiffs' spreadsheet totaled $1,941.08 but often included little identifying information except the date and the amount. (*Id*.) Plaintiffs also provided printouts of the invoices from Amazon showing the date of purchase, price and description of what was purchased. (Ptfs' Ex 62.) Some of the books were related to Amaral's areas of expertise — the study of the mind, language, senses and perception —

however, the majority appeared to be novels, thrillers, science fiction, and spy dramas.[5]  (Ptfs'
Ex 62 at 2-162.)  Amaral wrote that, "[a]t times, inspiration for a lecture arrives by looking at
something completely idiotic on YouTube, at other times it comes from an insight in the middle
of a mystery story.  It will be a sad day when the government decides what is relevant and what
is not."  (Ptfs' Ex 62 at 3.)

       3.      *Non-Digital Amazon purchases*

Plaintiffs hardware purchases — phone and computer accessories, headphones, toner
cartridges, books, batteries, and printers — totaled $2,129.29.  (Ptfs' Ex 58.)  Plaintiffs'
purchases included three Kindles, a printer, hearing aid and batteries, cell phone accessories, and
a textbook.  (*Id.*)  Amaral testified that he purchased the Kindles for his students to use and CSU
will not reimburse for those purchases.  Amaral testified that he was required to purchase a
hearing amplifier and related batteries and equipment for hearing-impaired students.  He testified
that CSU will not pay for items used to help address hearing-impaired students.  No letter or
policy statement from CSU for such expenses was provided.

       4.      *Subscription services*

Plaintiffs deducted expenses totaling $3,222 for various subscription services, *e.g.* Apple
music, Amazon Prime, Audible, Kindle, Netflix, Hulu, Starz, and Sirius radio.  (Ptfs' Exs 46,
61.)  Amaral testified that there was no distinction between personal and business use and that all
the subscriptions were used for business.  Print sources like Kindle were used "by [both
Plaintiffs] for magazines and inspirational reading."  (Ptfs' Ex 29 at 2.)  Amaral testified that he
often used video or music clips to "enliven" his lectures—he also used them on the Blackboard

---

[5] Examples include: "First Frost: A Novel", "Helltown Massacre: Book 2", "Wicked Charms: A Lizzy and Diesel Novel", "Hard Ride to Hell", and "The Assassins of Altis."

platform. (*See also* Ptfs' Ex 14-18.) For instance, Amaral testified that he incurred the Apple music charges to obtain the song "Migraine" by 21Pilots to play to his students to illustrate a point about the brain. Plaintiffs' Apple music charges alone totaled $447. Amaral testified that he subscribed to Starz even though it rarely had anything useful or interesting and that it mostly sat idle. Amaral testified that his Hulu and Netflix subscriptions rarely resulted in useful information but that he had to pay the subscription fee to monitor those sites for useful content. For instance, he was encouraged by students to watch the show "The Good Place" but found it unhelpful. Amaral gave an example of a show called "Brain Games" on Netflix that was helpful and that he used in class.

E.      *Employer Reimbursement Policy*

Amaral testified that CSU only reimburses travel expenses for administrative and recruiting activities, not for research and educational expenses. Plaintiffs provided the "Travel Policy" for CSU for 2018 which states that "[CSU] pays or reimburses for travel related expenses that are ordinary, reasonable, not extravagant, and necessary to conduct official University business." (Ptfs' Ex 103 at 5.) CSU's "Policy on Retention and Tenure" provides that "The Scholarship of Teaching (teaching effectiveness) is an essential precondition [of] retention and tenure."[6] (Ptfs' Ex 109 at 3.) Examples of teaching effectiveness includes "appropriate learning exercises", "designed course materials", "creation of course software", and "published research in teaching and learning." (*Id.*) That policy did not mention reimbursement for teaching or publishing expenses. Amaral provided a letter from CSU stating that he "applied for no reimbursement for expenses from 2015-2017." (Ptfs' Ex 103 at 1.)

---

[6] CSU's "Periodic Evaluation of Tenured Faculty" provides that tenured faculty be evaluated regularly (at least every five years) to ensure that they are meeting CSU standards with regard to teaching effectiveness. (Ptfs' Ex 111.)

Amaral testified Vepsalainen's architecture firm only reimburses for client-related expenses and did not reimburse her for cultural enrichment activities such as visiting museums, looking at buildings or familiarizing herself with an area. Plaintiffs provided emails from the firm noting that she claimed no reimbursement in 2015 and included an excerpt from the employee handbook that states:

> "Employees seeking reimbursement should submit completed Expense Reports to the Accounting Department weekly. Attach receipts for all expenses except mileage and per diem meal allowances. List expenses can be charged to clients on the Expense Report form using the correct project number. * * * Administrative and promotional expenses should be charged to the current administrative code. Promotional expenses apply only to the development of new clients."

(Ptfs' Ex 103 at 2-4.) Amaral testified on cross examination that Vepsalainen did not work for the architecture firm in 2015 but was instead worked as a freelance artist and illustrator.

## II. ANALYSIS

This issue before the court is whether and to what extent Plaintiffs are allowed a deduction for their miscellaneous employee business expenses under IRC § 162(a).

The legislature intended that Oregon personal income tax law be "identical in effect to the provisions of the Internal Revenue Code [IRC] relating to the measurement of taxable income of individuals, * * * modified as necessary by the state's jurisdiction to tax and the revenue needs of the state." ORS 316.007(1).[7] This includes both personal and business deductions. ORS 316.007(2). Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Plaintiffs bear the burden of proof and must prove their case by a preponderance of the evidence. ORS 305.427. "Preponderance of the

---

[7] The court's reference to the Oregon Revised Statutes (ORS) are to 2013.

evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). The court has jurisdiction to determine the correct amount of the deficiency, even if on "grounds other or different from those asserted by" Defendant. ORS 305.575.

A deduction is allowed for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" IRC § 162(a). "[N]o deduction shall be allowed for personal, living, or family expenses." IRC § 262(a). An "ordinary" expense means one "of common or frequent occurrence in the type of business involved." *Deputy v. du Pont*, 308 U 488, 495, 60 S Ct 363, 84 L Ed 416 (1940). A "necessary" expense is "appropriate or helpful" to the taxpayer's business. *Welch v. Helvering*, 290 US 111, 114, 54 S Ct 9, 78 L Ed 212 (1933). Employees may not claim IRC section 162(a) deductions for expenses that were or *could have been* reimbursed by their employer. *See Kirwan v. Dept. of Rev.*, 21 OTR 424, 432-433 (2014) ("For an employee to deduct ordinary and necessary business expenses, a request for reimbursement must be made and denied, or reimbursement must otherwise be unavailable.") This is because "an expense is not 'necessary' under IRC § 162(a) when an employee fails to claim reimbursement for the expenses, incurred in the course of his employment, when entitled to do so." *Orvis v. Comm'r,* 788 F2d 1406, 1408 (9th Cir 1986). Individuals are allowed miscellaneous itemized deductions, including unreimbursed employee business expenses, only to the extent they exceed two percent of adjusted gross income (AGI). IRC § 67(a).

Taxpayers must keep and be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1);

IRC § 6001. Generally, if an expense is deductible, but the taxpayer is unable to fully substantiate it, the court is permitted to make an approximation of the allowable amount. *Cohan v. Comm'r*, 39 F2d 540, 543-44 (2nd Cir 1930). However, that estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). Certain listed expenses are subject to more stringent substantiation requirements—IRC section 274(d) supersedes the *Cohan* rule and requires taxpayer to substantiate each element of such expenses "by adequate records or by sufficient evidence corroborating the taxpayer's own statement * * *." IRC § 274(d).

A.    *Internet Expense*

"A taxpayer may deduct the cost of home internet service pursuant to [IRC] 162(a) if the expense is ordinary and necessary in the taxpayer's trade or business." *Noz v. Comm'r*, 104 TCM (CCH) 350 (2012), 2012 WL 4344158 at *8 (US Tax Ct). Home internet expenses are not subject to strict substantiation under IRC section 274(d). *Bogue v. Comm'r*, 102 TCM (CCH) 41 (2011), 2011 WL 2709818 at *16 (US Tax Ct) (internet is characterized as a utility expense). Thus, the *Cohan* rule, allowing the court to estimate the deductible expense, applies. "To the extent that the taxpayer's home internet expense is attributable to nonbusiness use, it constitutes a nondeductible personal expense." *Tanzi v. Comm'r*, 112 TCM (CCH) 210, 2016 WL 4198211 at *6 (2016).

Plaintiffs substantiated $1,674 in internet expenses and the court is persuaded that both Plaintiffs, who worked remotely, likely made substantial use of their home internet for business. Unfortunately, Plaintiffs refused to allocate any portion to personal use. There is nothing in the exhibits, testimony, or otherwise that would allow the court to make a reasonable estimate of the portion of the internet expense attributable to personal use and any allocation by the court would be arbitrary. Accordingly, Plaintiffs' claimed deduction for home internet expense is denied.

///

B.    *Cell Phone and Tablet Expense*

In 2015, cell phones and tablets were no longer listed property subject to strict substantiation under IRC section 274(d).  *See* IRC § 280F(d)(4).[8]  Although Plaintiffs used their cell phones and tablet for work, they failed to allocate between personal use and business.  Even under the less rigorous standard in *Cohan* and *Vanicek*, the court must have some "evidentiary basis" from which to allocate between personal and business use of Plaintiffs' cell phones and tablet.  The court does not find credible Amaral's statement that Plaintiffs' personal cell phones were exclusively used for business—doing so would require the court to find that they never used their only cell phones for personal use.  *See e.g.* IRC § 262(b).  Accordingly, Plaintiffs' cell phone and tablet expense in the amount of $2,379 is denied.

C.    *Travel Expense*

Travel expenses are subject to strict substantiation under IRC section 274(d).  Deductions for travel expenses, meals and entertainment are disallowed unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) the amount of the expense; (2) the time and place of the expense; (3) the business purpose of the expense; and (4) the business relationship to the taxpayer of the persons involved in the expense.  In addition to strict substantiation under section 274(d), deductions for foreign travel are subject to the allocation requirements of section 274(c).  Treas Reg § 1.274-4(a) (requiring proration of foreign travel expenses between business and nonbusiness activities).  Generally, travel for personal enrichment is a personal, not a business expense, even if the travel has some value to the employer.  *See generally Adelson v. U.S.*, 342 F 2d 332 (9th Cir 1965) (disallowing travel expenses to a teacher despite "[t]he virtue of travel as part of a liberal education").

---

[8] Cell phones were removed from the strict substantiation requirements of IRC section 274(d) by the Small Business Jobs Act of 2010. Pub L 111-240, § 2043, 124 Stat 2504, 2560 (2010).

Here, it is unclear when the trip or trips to Finland occurred or whether they had a business purpose. Generally, travel expenses are not deductible as a form of education expense unless the educational component improved taxpayer's "skills in a direct and proximate manner." *See e.g. Jorgensen v. Comm'r*, 79 TCM (CCH) 1926 (2000), 2000 WL 375231 (US Tax Ct) (allowing travel deduction where taxpayer demonstrated that she used education obtained during overseas travel to enhance curriculum and work more effectively with students); IRC § 274(m)(2). Vepsalainen's travel to Finland was not for a specific client or project but so she could familiarize or refamiliarize herself with the area and for intellectual enrichment. This does not rise to the "ordinary and necessary" requirement of IRC section 162(a). Further, there is no log or other documentation that meet the strict substantiation requirements of IRC section 274(d) that would allow the court to properly apply IRC section 274(c). Accordingly, Plaintiffs' travel expense deduction is denied.

D.      *Other Expenses*

Plaintiffs' other expenses all relate to books, media, software, hardware, computer and phone accessories and subscription services. "Generally, expenses incurred by a university professor to engage in the teaching and research expected of the professor by the university are ordinary and necessary expenses." *Tanzi*, 2016 WL 4198211 at *2; *see also* Rev Rul 63-275 (providing that costs incurred by professors "for the purpose of teaching, lecturing, or writing and publishing in his area of competence, as a means of carrying out the duties expected of him in his capacity as a professor and without expectation of profit apart from salary" are deductible).[9] Professor expenses must be "expected

---

[9] Education expenses are generally regarded as personal. *See Owens v. Comm'r*, 49 TCM (CCH) 427 (1985). However, research and education expenses are deductible to the extent they "maintain[] or improve[] the skills required in the taxpayer's employment * * *." *Id.*; *see also* Treas Reg § 1.162–5(a), (c) (requiring "bona fide business purpose of the individual's employer"). "The fact that [] education is helpful * * * in the performance of [taxpayer's] employment does not establish that its cost is deductible as a business expense." *Jorgensen*, 2000 WL 375231 at *4. Rather Plaintiffs "must establish that there is a direct and proximate relationship" between the expense incurred and the employment. *Id.* "A precise correlation is not necessary, but the expenditure must enhance existing employment skills." *Id.*

of the taxpayer" by the university and "directly related to the general field in which the professor is performing services as an educator." *Feldman v. Comm'r*, 26 TCM (CCH) 444 (1967). With that background in mind the court will consider the specific expenses at issue.

1.  *Newsreader access charges*

Amaral testified that he used newsreader platforms to obtain the latest academic and professional information. That does appear to be "helpful" to Amaral's work as a professor. The problem is that he failed to connect the newsreader services with his job duties in a direct way. It is unclear if Amaral was using them for research, content for his lectures, or something else. The court finds that the newsreader access charge expenses must be denied.

2.  *Digital Amazon purchases*

Plaintiffs claimed $1,941 for their Amazon digital purchases, primarily Kindle books. The court disallows all purchases for novels and science fiction because they are personal in nature and not connected to Plaintiffs' work. The court carefully reviewed the remaining invoices provided and noted that some seemed related to Amaral's academic discipline, including the textbook "Cognitive Phenomenology (New Problems of Philosophy)" and various other philosophy texts. Of the $1,941 claimed the court finds that $254 were related to Amaral's employment as a philosophy professor. With respect to disallowed purchases, it is possible that Amaral was developing new courses, which is one of CSU's expectations for professors. Unfortunately, he failed to connect the purchases with his teaching and professorial duties.[10]

---

[10] The court also notes that Plaintiffs purchased certain books multiple times in multiple formats for unclear reasons. For example, Amaral purchased "Kant and Pre-Kantian Themes" for Kindle on April 27, and then again on April 29; he purchased "Descartes and Suarez: Mechanizing the Magic" for Kindle on April 27, April 29, and May 2. (Ptfs' Ex 62 at 27, 30, 35, 37.) It seems likely that these purchases had to do with Amaral's publishing efforts—these same books are listed on his CV—but without more specific testimony on the business purpose of the multiple purchases for the same item, the court allowed the expense once. (Ptfs' Ex 23.)

3.      *Non-Digital Amazon purchases*

Plaintiffs deducted phone and computer accessories, supplies, and hardware in the

amount of $2,129. This amount includes the cost of three Kindles that Amaral claimed that he

purchased for student use and a hearing amplification device. Amaral did not provide any

evidence that such purchases were expected by his employer. Those expenses are denied.

Of the remaining expenses, the court found numerous discrepancies between the amounts

listed on the spreadsheet and the amounts stated on the receipts.[11] The court was also unable to

determine to what extent Amaral's purchases were connected with his professional activities; for

example, Plaintiffs purchased an Arris Surfboard Cable Modem and Wi-Fi router for $150.91 but

Amaral did not testify as to how this purchase related to his job duties or give any estimate of

business to personal use of that item. Likewise, Plaintiffs purchased a SanDisk Ultra II 960GB

Sata II 2.5 inch Solid State Drive for $215.99 but no explanation or testimony was provided as to

the business use of that item. Plaintiffs did not clearly identify the business use of their computer

and internet accessories, nor did they allocate between business and personal use. The court is

unable to arrive at an evidence-based allocation of those expenses and finds they must be denied.

4.      *Subscription services*

Plaintiffs claimed a deduction of $3,222 for various subscription services including:

Apple music, Amazon Prime, Audible, Kindle, YouTube, Netflix, Hulu, Starz, and Disney. This

was based on Amaral's theory that everything Plaintiffs engaged in was a potential source of

"inspiration" or "creative insight" thereby transforming all personal activities to business

activities. (*See e.g.* Ptfs' Ex 62 at 3.) "A personal expense exists when it is incurred by all

---

[11] For example, Plaintiffs' spreadsheet shows that they purchased a LED Multifunction Printer for $349 on January 26, 2015, but the receipt for a LED Multifunctional Printer dated January 26, 2015, shows the price (including shipping) as $238.99. (*Compare* Ex 58 at 1 with Ex 59 at 20.)

people generally, regardless of occupation." *Comm'r v. Moran*, 236 F2d 595, 597 (8th Cir 1956). "It is true that certain expenses normally personal may become deductible by reason of intimate relation to an occupation carried on away from home * * * but this is so because of the predominant business characteristics of the expense." *Id.* Expenses that are typically considered personal may rise to the level of business expenses by virtue of their "direct and proximate relationship" to the performance of employment duties. *Jorgensen*, 2000 WL 375231 at *4. Entertainment expenses are certainly the types of expenses that are generally considered personal. The issue is whether Plaintiffs have established a direct relationship with Amaral's job duties that would make the expenses more than merely "helpful" to Amaral's job duties. *See Jorgensen*, 2000 WL 375231 at *4 (holding fact that expense is "helpful" is not enough to establish deductibility of expense).

*Tanzi v. Comm'r*, 112 TCM (CCH) 210 (2016) is instructive in this case. In *Tanzi*, the taxpayers were both employed by a university, one as an adjunct professor and the other as a campus librarian. Taxpayers deducted "expenses incurred purchasing books, DVDs, and CDs for a 'professional library' as well as a satellite television subscription." Both taxpayers were highly educated and stated that holding such positions and degrees meant "developing knowledge, exploring and essentially self-educating." The court held that expenses incurred for expanding "general knowledge" are not "ordinary and necessary" expenses deductible under IRC 162(a), rather they were more properly classified as "personal, living, or family expenses" which are not deductible.

Similarly, here, Plaintiffs gave few specific examples of how the substantial cost incurred on entertainment subscription services were directly connected with Amaral's teaching activities. Amaral testified to using one show and one song in the classroom derived from his subscription

services.  The court finds this insufficiently direct and proximate to justify the $3,222 expense.

Plaintiffs' deduction for entertainment subscription services is denied.

F.      *Employer Reimbursement Policy; AGI Threshold*

Where an employee's inability to receive reimbursements is challenged, taxpayer must

present sufficient evidence that the expenses in question could not be reimbursed—*e.g.* a written

reimbursement policy or letter from taxpayer's employer.  *Almodovar v. Dept. of Rev.*, TC-MD

180243N, 2019 WL 1781492 at *3 (Or Tax M Div Apr 22, 2019).  Such a rule prevents "the

taxpayer from converting a business expense of his company into one of his own simply by

failing to seek reimbursement."  *Orvis*, 788 F2d at 1408; *see also Drury v. Comm'r*, 36 TCM

(CCH) 835 (1977) (research associate at university had burden of showing printing costs not

subject to reimbursement by university).

Here, Defendant challenged Plaintiffs' inability to receive reimbursement.  Plaintiffs

provided excerpts from each of their employers' policy handbooks.  However, neither excerpt

discussed the relevant expenses.  For example, Amaral presented his employer's policy with

respect to travel expenses, but he did not claim to have any travel expenses in 2015.  Plaintiffs'

letters from their employers simply state that neither of them *requested* reimbursement for any

expenses in 2015.  The issue is not whether Plaintiffs requested reimbursement but whether, if

they had, their employer would have been obligated to provide it.

Amaral argued that CSU's policy on academic freedom prevented it from either

approving or denying academic expenses for research, supplies, and books.  It would have been

helpful to have a clearer statement from CSU to that effect.  Even though the court is persuaded

that Amaral spent $254 on books related to his work, he did not show that it was not subject to

reimbursement by CSU.

Even if the court were to allow $254 in unreimbursed employee expenses, Plaintiffs' total miscellaneous itemized deductions would not exceed two percent of adjusted gross income (AGI). *See* IRC § 67. (*See* Def's Ex A-2 (two percent of AGI is $3,753, which exceeds the $1,333 total in employee expenses and other miscellaneous itemized expenses).)

III. CONCLUSION

After carefully reviewing the evidence presented, the court finds that Plaintiffs' appeal must be denied. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of February 2020.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Allison R. Boomer and entered on February 19, 2020.*